**CLARK TRANSPORT COMPANY,**
Plaintiff,

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Defendants,**

and

**K. W. McKee, Incorporated, Intervenor Defendant,**

Ford Motor Company, Intervenor.

No. 63 C 2337.

United States District Court
N. D. Illinois, E. D.

Aug. 10, 1964.

Jack Goodman, Martin E. Litwin, Axelrod, Goodman & Steiner, Chicago, Ill., Clay R. Moore, Mackall, Crounse, Moore, Helmey & Holmes, Minneapolis, Minn., for plaintiff.

Robert W. Ginnane, Gen. Counsel, and Francis A. Silver, Assoc. Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

William H. Orrick, Jr., Asst. Atty. Gen., John H. D. Wigger, Dept. of Justice, Washington, D. C., Edward V. Hanrahan, U. S. Atty., Chicago, Ill., Miles W. Lord, U. S. Atty., Minneapolis, Minn., for the United States.

W. Donald McSweeney, Schiff, Hardin, Waite, Dorschel & Britton, Chicago, Ill., Janes & Elliott, Harrison P. Dilworth III, St. Paul, Minn., for Intervenor Defendant R. W. McKee, Inc.

W. Donald McSweeney, Charles W. Murdock, Schiff, Hardin, Waite, Dorschel & Britton, Chicago, Ill., James E. O'Boyle, Dearborn, Mich., Robert Elliott, Jr., Janes & Elliott, St. Paul, Minn., for Intervenor Ford Motor Co.

Before SWYGERT, Circuit Judge, and IGOE and PERRY, District Judges.

SWYGERT, Circuit Judge, IGOE, District Judge, concurring.

This action to set aside an order of the Interstate Commerce Commission issued on September 11, 1963, having been heard by this court as a three-judge district court pursuant to 28 U.S.C. § 2284, the court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. On September 28, 1962, an application was filed with the Commission by K. W. McKee, Inc., of St. Paul, Minnesota, for a permit authorizing operation in interstate or foreign commerce as a contract carrier by motor vehicle of automobiles and trucks in secondary movements in truckaway service from St. Paul, Minnesota, to points in North Dakota.

2. Pursuant to statutory authority and the rules of the Commission, the application was referred to the Commission's joint board No. 24 for a hearing and recommendation of an appropriate order thereon.

3. Clark Transport Company, an Illinois corporation, opposed the application and participated in the hearings as a protestant.

4. Ford Motor Company intervened in the proceedings and participated therein in support of the application.

5. On June 6, 1963, the joint board filed its report and recommended order. The report found that McKee is a contract carrier within the provisions of section 49 U.S.C. § 303(a) (15), considered the statutory criteria set forth in 49 U.S.C. § 309(b) as interpreted in ICC v. J–T Transport Co., 368 U.S. 81, 82 S.Ct. 204, 7 L.Ed.2d 147 (1961); made findings and conclusions based thereon and concluded that upon consideration of all evidence of record, operation in interstate or foreign commerce by McKee as a contract carrier, under a continuing contract with Ford, of automobiles and trucks, in secondary movements in truckaway service from St. Paul, Minnesota, to points in North Dakota would be consistent with the public interest and the national transportation policy; that McKee is fit to perform such service; and that McKee's application should be granted.

6. In addition the joint board found that:

(a) The only shipper which applicant, McKee, proposes to serve is Ford Motor Company.

(b) Ford Motor Company has a distinct need for a specialized service be-

cause Ford, at its St. Paul assembly plant, has constructed a railhead to receive vehicles from other assembly plants. It combines, in mixed shipments from St. Paul, vehicles assembled at St. Paul with those delivered by rail, and it has integrated its unloading, loading, dispatching, and accounting operations so that they are performed with a high degree of efficiency.

(c) Ford, however, has not been able to realize fully the advantages inherent in this integrated system since it has had to utilize two carriers to effectuate deliveries from St. Paul. McKee has both initial and secondary authority to all states serviced from Ford's St. Paul plant with the exception of North Dakota where it has only initial authority. Thus, there is a gap in McKee's authority which has necessitated using Clark for secondary movements into this state, which is the only state where Clark has both initial and secondary authority.

(d) McKee meets Ford's distinct need for a carrier whose operations are integrated with those of Ford. McKee has a loading yard adjacent to Ford's plant. Vehicles arriving by rail, with the exception of those destined for North Dakota, are immediately parked in McKee's yard for mixing with vehicles manufactured at St. Paul and transportation to their ultimate destination. Ford can plot the destination of every vehicle and plan the most economical load mixture. McKee's billing system is adapted to Ford's punch-card system.

(e) Clark's service is primarily designed to meet the requirements of shippers who do not have their own railhead facilities. There is additional handling of the vehicles Clark delivers since Clark must pick up the vehicles at Ford's plant and truck them across town where they are unloaded and reloaded for shipment. This requires Clark to travel through Ford's plant area, and it necessitates separate inspection of the vehicles handled by Clark. Moreover, Clark determines the composition of the loads, not Ford, and Ford must provide additional handling and facilities at its plant for ve-

hicles set aside for Clark. Clark has not shown that its service is tailored to meet Ford's distinct needs.

(f) Although Clark would be adversely affected by a grant of this application, the disadvantage Clark would suffer would be outweighed by the advantages to the supporting shipper resulting from a grant of the application.

(g) If the application were denied, McKee would lose the opportunity to increase the efficiency of its operations which would result from a grant of authority. Ford, however, would be adversely affected since it would not be able to take full advantage of its railhead facility.

(h) The changing character of Ford's requirements is pertinent in that Ford's shipping patterns have recently changed to emphasize rail-motor movements which in turn has created Ford's distinct need for a carrier that will enable it to make full use of the St. Paul plant as an ex rail terminal.

(i) Weighing these criteria, the application should be granted.

7. Exceptions to the report and recommended order were filed by Clark, to which replies were made by McKee and Ford. On September 11, 1963, the Commission, division 1, found that the intervention by Ford was proper; that the exceptions and replies raised no matters of fact or law not considered by the joint board. The Commission found that the evidence considered in the light of the exceptions and replies thereto did not warrant a result different from that reached by the joint board; that the statement of facts, the conclusions, and the findings of the joint board should be affirmed and adopted by the Commission. The Commission ordered that an appropriate permit be issued to McKee upon compliance with specified procedural requirements. Because of the temporary restraining order issued on October 24, 1963, and the superseding interlocutory injunction issued by this court on March 24, 1964, the permit has not been issued to McKee.

8. In September, 1963, Clark filed a petition with the Commission to have this matter declared an issue of general transportation importance which was denied.

9. The findings of the Commission are supported by substantial evidence in the record as a whole and there is a rational basis for the findings and conclusions of the Commission based upon such evidence.

### OPINION

This is an action to review the order of the Interstate Commerce Commission granting K. W. McKee, Inc., a permit authorizing it to operate as a contract carrier, by motor vehicle over irregular routes, of automobiles and trucks in secondary movements, in truckaway service from St. Paul, Minnesota, to North Dakota, under a contract with Ford Motor Company.

Plaintiff Clark Transport Company seeks to have the order set aside because the Commission erred in balancing the five criteria as set forth in section 209(b) of the Interstate Commerce Act, 49 U.S.C. § 309(b) and interpreted in I. C. C. v. J-T Transport Co., 368 U.S. 81, 82 S.Ct. 204, 7 L.Ed.2d 147 (1961), and it has improperly applied the criteria in McKee's favor when neither the evidence nor a proper interpretation of the statute could permit such a decision.

Under the statute in determining whether issuance of a permit will be consistent with the public interest and the national transportation policy, the Commission must consider the number of shippers to be served by the applicant, the nature of the service proposed, the effect on the services of carriers who are opposed to the granting of the application, the effect on the applicant and its shipper if the permit were denied, and the changing character of the shipper's requirements.

The Supreme Court in J-T Transport Co. pointed out that the existing facilities, willingness, or ability of an existing carrier to render the service involved is not determinative. The Court interpreted section 203(a) (15) of the act, 49 U.S.C. § 303(a) (15), to mean that "the 'distinct need' of shippers for the new contract carrier service must be weighed against the adequacy of existing services." In other words, the adequacy of Clark's existing service does not require the denial of the application if the distinct needs of Ford may be better served by McKee.

We are satisfied that this was the approach of the Commission. The Commission had before it detailed evidence pertaining to Ford's special requirements for the service McKee is furnishing the company and to its difficulties encountered by using the service supplied by Clark. It concluded that McKee "is the only existing carrier which is able to provide shipper [Ford] with the transportation service it requires."

We are satisfied that appraising the record in its totality, the Commission's finding is supported by substantial evidence. We think the Commission properly considered the five criteria contained in section 209(b) of the act and that it did not load the scales in favor of one criterion as in J-T Transport Co.

Our task is limited to ascertaining "whether there is warrant in the law and the facts for what the Commission has done." United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946). Moreover, after reviewing the record we are compelled to conclude that Clark has failed to demonstrate that the Commission's findings and conclusions were unwarranted or contrary to the evidence. There was a rational and legal basis for its decision.

Clark protests that the Commission in permitting the decision of two commissioners (one member of the division dissented) to stand without a rehearing by the full Commission, conducted the proceeding in a cursory fashion. Clark does not assert that the Commission's action was illegal or did not conform to the Commission's rules of practice. Under section 17(6) of the act, 49 U.S.C. § 17(6), the Commission has specific statutory au-

thority to render division decisions final and, by its general rules, to restrict the right to file petitions for reconsideration of division decisions by the entire Commission to those cases in which "an issue of general transportation importance" is involved. Clark's petition to have the instant proceeding declared an issue of general transportation importance was denied.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the subject matter of the action and of the parties.

2. McKee and Ford are proper parties to this proceeding.

3. The findings of the Commission are supported by substantial evidence in the record as a whole and there is a rational basis for the findings and conclusions of the Commission based upon such evidence.

4. The decision of the Commission has a rational basis and is proper in all respects and therefore the relief sought by plaintiff should be denied, the interlocutory injunction vacated, and the complaint dismissed.

5. Any conclusion of law entered herein which may be construed as a finding of fact shall be so deemed and treated as if set forth under findings of fact.

Wherefore, it is ordered that an appropriate final judgment in accordance with the foregoing findings of fact, conclusions of law, and opinion be entered.

PERRY, District Judge (dissenting).

This court, of course, is confined in the scope of its judicial review of the Commission's order which granted McKee's application for a permit. Our function is to determine whether there is in the record, considered as a whole, substantial evidence and a rational basis to support the Commission's findings and order, and whether the Commission correctly applied the criteria which Congress declared should be considered by the Commission "in determining whether issuance of a permit will be consistent with

the public interest and the national transportation policy declared in this Act."

Having studied the record made before the Commission, and without in any wise substituting any of my own inferences for those drawn by the Commission from the testimony taken and the record made, I conclude that I cannot agree that the findings of the Commission are supported by substantial evidence in the record as a whole nor can I agree that there is a rational basis for the findings and conclusions of the Commission based upon such evidence. Moreover, I do not believe that the Commission correctly applied or balanced the criteria.

In Section (b) of the statute (49 U.S. C.A. § 309), Congress requires that one of the conditions for the issuance of a permit be that the proposed operation, to the extent authorized by the permit, will be consistent with the public interest and the National Transportation Policy declared in the Act, and then sets forth criteria or guide posts for the Commission to consider and follow in determining whether the proposed operation will be consistent with those goals. Presumably Congress intended that the interest of the general public be considered—not only that of the shipping public but also of the vast purchasing or consuming public. The Commission is required to consider (1) the number of shippers to be served by the applicant, (2) the nature of the service proposed, (3) the effect which granting the permit would have upon the services of the protesting carriers and (4) the effect which denying the permit would have upon the applicant and/or its shipper and (5) the changing character of that shipper's requirements. Since Congress makes no point that one of the criteria shall be given more weight than any other, we may conclude that each is to be given the same weight—a matter of delicate precision and balancing.

Without going into an extended discussion of the record, it appears that Clark Transport Company has served Ford Motor Company, the shipper, well, satisfactorily and, on one occasion, with commendation since about June, 1961,

handling Ford's secondary traffic for the Twin Cities to North Dakota, and capable and willing, as well as accustomed to making modifications and adjustments in its equipment to meet changing and particular needs of the shipper.

One of the purposes of the National Transportation Policy as declared by Congress is "to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers."

From the record it appears that Clark, a common carrier, presently has a good coverage in North Dakota as well as a good mix and good service there. However, it appears that if the volume of Clark's traffic to North Dakota is reduced by the loss of Ford's traffic, other members of the shipping public will be adversely affected because, since North Dakota is a sparsely settled State, a carrier must have a large volume of traffic in order properly to mix its load. The problem involved is interestingly illustrated by an operating example set out in Clark's opening brief:

"Suppose Clark had 2 Chevrolets, 1 Dodge, and 2 Fords, a full load, all destined to Bismarck, North Dakota at the same time. This is proper 'mixing' and everyone benefits by it.

"Suppose, however, that Clark loses the Ford business * * * and, on the day that the 2 Chevrolets and the 1 Dodge are scheduled to begin the move to Bismarck, Clark Transport, because of having no Fords, has only three cars on that load.

"Clark, then, has three choices available, each of them costly. (1) Clark can wait until General Motors or Chrysler sends, via rail, two more cars destined to Bismarck to fill in the load. This penalizes the General Motors and Chrysler dealers in Bismarck who must wait for their cars, running the risk of losing a sale to a disgruntled automobile buyer. (2)

Clark can fill in the load with two cars to Fargo—200 miles this side of Bismarck. This is fine to *Fargo*, but between Fargo and Bismarck, Clark would be running partly empty and must assess the additional rate prescribed in its tariff. (3) Clark could simply take off with only three cars on the truck. Clark, however, must charge General Motors or Chrysler in that event a *three car rate* which, *per car*, is obviously higher than a five car rate. The more cars loaded, the less it costs per car. This penalizes General Motors and Chrysler."

Parenthetically, I think we may safely predict at this point that the purchasing or consuming public would be adversely affected by the higher car prices which would result. As one witness said, "Somebody has to pay for it in the rates or some place."

McKee, the applicant, never lawfully handled the traffic in question and would suffer no adverse effect in the event of a denial of its application.

There was testimony that Clark had received a total gross revenue of almost $174,000.00 in thirteen months, a considerable sum. Clearly, the potential loss of traffic to Clark Transport Company would outweigh any detriment to applicant McKee.

Undeniably, Ford, the shipper supporting the application, has demonstrated a preference for the services of the applicant. However, I do not find substantial evidence in the record that Ford's distinct needs will be better served by McKee or that Ford's needs are or will be changing.

In my opinion, the Commission has in this case improperly applied the criteria by "loading" the scales in favor of the shipper and the applicant, and has not in fact given the requisite consideration to the public interest and the National Transportation Policy.

I would remand this cause to the Commission for further consideration.